1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TINA SHIELDS,

                    Plaintiff,

          v.

BCI COCA-COLA BOTTLING
COMPANY OF LOS ANGELES,

                    Defendant.

CASE NO. C04-928JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendant's motion for summary judgment.
Defendant BCI-Coca Cola Bottling Company of Los Angeles ("BCI Coke") seeks
summary judgment against all of Plaintiff's claims.  (Dkt. # 31).  For the reasons stated
below, the court GRANTS BCI Coke's motion in part and DENIES it in part.

## II.  BACKGROUND

Plaintiff Tina Shields was a production worker at BCI Coke's Bellevue bottling
plant from 1995 to May 2002.  During that time, a variety of production supervisors
oversaw Ms. Shields' work.  From 1998 until Ms. Shields' termination, Troy Nievaard
served as the production manager overseeing the production supervisors.  During the

ORDER – 1

same time, Mr. Nievaard reported to John Terry, the Director of Operations for the Bellevue facility.  There is no dispute that Ms. Shields was a member of Teamsters Local Union No. 117 ("the union") and worked at BCI Coke under the terms of a Collective Bargaining Agreement ("CBA").

During Ms. Shields' tenure at BCI Coke, she filed four separate charges of unlawful practices with the Equal Employment Opportunity Commission ("EEOC") and the Washington State Human Rights Commission ("WHRC").  The content and timing of these charges is critical to assessing the timeliness of the claims now before the court.

She filed her first charge in June 2000, alleging that BCI Coke failed to accommodate her disability and retaliated against her for reporting an incident of sexual harassment against a co-worker in 1995.  She based her disability claim on BCI Coke's refusal to transfer her from the graveyard shift to the day shift after her doctor diagnosed her with situational depression and sleep dysfunction in October 1999.  The WHRC issued a "no reasonable cause" determination in response to the charge, finding that there was insufficient evidence to demonstrate an unfair employment practice.  The EEOC adopted the WHRC's conclusion and issued a "right to sue" notice on December 14, 2000.

Ms. Shields filed her first charge while on a leave of absence from BCI Coke. Following an incident with production supervisor Eric Wolfe in April 2000, Ms. Shields left BCI Coke for more than a year, claiming that her depression and sleep dysfunction made her unable to work.  In March 2001, BCI Coke informed Ms. Shields that it intended to terminate her employment pursuant to a CBA clause requiring dismissal of any employee who remains on leave for more than a year.  This led her to agree to return to work only if BCI Coke guaranteed her day shift work and limited her overtime

ORDER – 2

assignments.  BCI Coke rejected the request, claiming that it could not accommodate Ms. Shields without violating the seniority provisions of the CBA.  BCI Coke terminated Ms. Shields on April 5, 2001.  Ms. Shields filed a grievance with the union.  On April 27, 2001, she sent a letter to BCI Coke expressing interest in an open "syrup tender" position. Mr. Nievaard wrote Ms. Shields a letter the next day informing her that she would need to come in to the Bellevue facility to complete an application in order to be considered for the position.  Although Ms. Shields claims that she applied for the position, she is unable to offer any documentary evidence that she did so.  In July 2001, the union reached a compromise with BCI Coke reinstating her in her former position.

Ms. Shields filed a second EEOC charge in August 2001.  This time she complained that after BCI Coke reinstated her, management harassed her by ordering her to keep her work area clean, that her manager "came by [her] work area and said 'hi' to [her] on several occasions" in an unwelcome fashion, and that management retaliated by scheduling a shift-wide meeting after she complained that workers were telling "dirty jokes" in the BCI Coke lunchroom.  She alleged that these incidents constituted sexual harassment and retaliation.  The EEOC rejected the charge and issued a right to sue notice on August 28, 2001.

She filed a third charge with the WHRC in October 2001.  She alleged that BCI Coke management had failed to reasonably accommodate her disability by terminating her in April 2001 instead of granting her request for day shift work and limited overtime. She also alleged that BCI Coke failed to consider her for the syrup tender position although she was qualified.  She claimed that these actions constituted disability discrimination, failure to accommodate, and retaliation for requesting disability accommodation.

ORDER – 3

Meanwhile, the fractious relationship between Ms. Shields and management escalated.  In December 2001, Mr. Nievaard issued her three warnings, one for failure to wear a proper uniform, one for leaving her work station unattended, and another for slowing the production line without authorization.  BCI Coke subsequently retracted all three warnings.  In early 2002, Ms. Shields contacted Coca-Cola corporate headquarters in Atlanta, Georgia to complain of gender discrimination, hostile work environment, and retaliation.  Headquarters sent an official to conduct an investigation at the Bellevue facility.  In May 2002, Mr. Nievaard approached Ms. Shields while she was working on the production line and handed her FMLA leave request forms that she had requested.  Ms. Shields claimed that Mr. Nievaard held the paper up to her face in a confrontational manner.  Although accounts of this interaction vary considerably, several witnesses report that Ms. Shields ultimately told Mr. Nievaard to "shove the form up [his] ass."  Mr. Terry and Mr. Nievaard requested that she meet with them and a union representative to discuss the incident.  Ms. Shields refused to participate in the meeting for two days, but ultimately consented.  After the meeting, BCI Coke terminated Ms. Shields for insubordination.

In June 2002, Ms. Shields filed her fourth charge with the WHRC.  She alleged that she had informed management in July 2001 that a coworker had been harassed, that workers used inappropriate language and behavior at BCI Coke, that BCI Coke had taken corrective action and discipline against her in retaliation for protected conduct, and that BCI Coke both retaliated and discriminated against her in terminating her.  The EEOC issued a notice of right to sue for Ms. Shields' third and fourth charges on March 24, 2004.

ORDER – 4

Ms. Shields filed suit on April 1, 2004.  She claims that BCI Coke violated the

Washington Law Against Discrimination ("WLAD") and Title VII of the Civil Rights Act

of 1964 ("Title VII") by discriminating against her because of her gender, retaliating

against her for engaging in protected activities, and fostering a hostile work environment

for women.  She also alleges violations under the Americans with Disabilities Act

("ADA") and the WLAD based on her disability status.  She claims that BCI Coke

terminated her in part for exercising rights under the Family Medical Leave Act

("FMLA").  She also contends that BCI Coke violated the CBA, discharged her in

violation of Washington public policy, discriminated against her on the basis of her union

membership, and negligently caused her emotional distress.

## III.  ANALYSIS

The court begins with the simplest issue before it.  Ms. Shields consents to the

dismissal of her claims of "disparate treatment, hostile work environment, retaliation, and

wrongful discharge that relate to her union activities and her claim for breach of [the]

collective bargaining agreement."  Pltf.'s Opp'n at 2 n.1.  The court therefore grants BCI

Coke's motion as it pertains to those claims.

**A.      The Applicable Statutes of Limitation Eliminate Many of Ms. Shields' Claims.**

BCI Coke argues that several of Ms. Shields' claims based on discrete adverse

employment actions are time-barred.  Under both Title VII and the ADA, a plaintiff who

files a charge claiming a discrete adverse employment action with the appropriate state

agency (the WHRC in this case) has 300 days from the adverse action to file a charge

with the EEOC.  42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a) (adopting procedures

from § 2000e-5 for ADA claims).  Once the EEOC informs the plaintiff that it has

ORDER – 5

declined to pursue the charge and has given notice of the plaintiff's right to sue, the plaintiff has 90 days to bring a lawsuit.  42 U.S.C. § 2000e-5(f)(1).

Ms. Shields did not timely file suit as to her claims in her first and second EEOC charges of discrete actionable practices.  Her first charge (regarding BCI's failure to accommodate her disability by granting her a shift change in late 1999 to early 2000 and purported retaliation for making a sexual harassment claim) resulted in a right to sue letter in December 2000.  Ms. Shields plainly did not file suit regarding those claims within 90 days.  Her second charge, to the extent it alleges specific acts of retaliation, resulted in an August 2001 right to sue letter.  Again, Ms. Shields did not timely file suit for those claims.

Ms. Shields' Title VII hostile work environment claims are also untimely.  As the Supreme Court held in <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), hostile environment allegations receive unique treatment for statute of limitations purposes.  Unlike discrete acts of discrimination or retaliation, for which the statute of limitations runs from the date the discrete act happened, a hostile work environment claim is generally timely as long as at least one occurrence evidencing the hostile environment occurred within the statutory period.  <u>Id.</u> at 110 (applying statute of limitations to "discrete retaliatory or discriminatory act[s]"); 117 (applying statute of limitations to hostile environment claim).  In order to preserve a hostile environment claim, however, a plaintiff must file an EEOC charge that is timely as to at least one of the acts that contributed to the hostile environment, and timely sue upon that charges.  Ms. Shields timely filed suit only as to her third and fourth EEOC charges, and as her counsel admitted at oral argument, neither charge contained hostile environment allegations.  Thus, Ms. Shields has no hostile environment claim under Title VII.

ORDER – 6

Under the WLAD, a plaintiff must file a claim for a discrete unlawful act within three years of its occurrence.  Antonius v. King County, 103 P.3d 729, 732 (Wash. 2004). Although the Antonius court had no occasion to decide whether to adopt the Morgan approach to assessing the statute of limitations for discrete acts, the court noted that Morgan rejected Washington court's application of the continuing violation doctrine to discrete act claims.  Id. at 732-33.  The court assumes that a Washington court presented with the question would hold, as the Court did in Morgan, that each discrete act of discrimination or retaliation triggers the statute of limitations.  Thus, the court holds that Ms. Shields' WLAD claims of discrete unlawful acts occurring before April 1, 2001 are untimely.  Her hostile environment claims under the WLAD are timely, however, because at least one of the acts contributing to the hostile environment occurred after April 1, 2001.  See id. at 736 (adopting the Morgan approach to hostile environment claims under the WLAD).

The foregoing analysis serves as an overview of the statutes of limitation at issue. The court will conduct a more detailed analysis in its discussion of each of Ms. Shields' statutory claims.

**B.     Ms. Shields' Timely Claims of Gender Discrimination and Retaliation Can Proceed to a Jury.**

The court turns first to Ms. Shields' claims of gender discrimination and retaliation, as the court must address BCI Coke's motion as to these claims under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Each claim requires Ms. Shields to provide evidence establishing a prima facie case of an adverse employment action that BCI Coke took on an unlawful basis.  If she does so, the burden shifts to BCI Coke to provide a legitimate explanation for the adverse employment action.  If BCI Coke satisfies its burden, Ms. Shields must provide evidence

ORDER – 7

demonstrating that BCI Coke's proffered reason is pretextual.  E.g., Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (analyzing gender discrimination claim); Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000) (analyzing retaliation claim).  Neither party suggests that a different standard applies under the WLAD, and Washington courts have generally adopted the McDonnell Douglas framework.  Hill v. BCTI Income Fund-I, 23 P.3d 440, 446 (Wash. 2001) (analyzing gender discrimination claim); Allison v. Housing Auth. of City of Seattle, 821 P.2d 34, 39 (Wash. 1991) (applying McDonnell Douglas to retaliation claim but adopting relaxed causation standard).

### 1. The Statute of Limitations Narrows Ms. Shields' Gender Discrimination and Retaliation Claims to Five Incidents.

Although Ms. Shields claims that BCI Coke discriminated against her on the basis of her gender and retaliated against her for engaging in protected activities as long ago as the 1990s, the statute of limitations for both her WLAD and Title VII claims leaves her with only five potentially actionable events.  As to her WLAD claims, she can only reach conduct that occurred on or after April 1, 2001, four years before she filed suit.  As to her Title VII gender discrimination claims, the only EEOC charge containing gender discrimination allegations that she timely sued upon was her fourth charge on June 11, 2002.  Thus her Title VII gender discrimination claims are limited to those accruing after August 14, 2001, 300 days before she filed her fourth charge.  The same limitation applies to her retaliation claims, except that her third EEOC charge included an allegation that BCI Coke's refusal to give her the syrup tender position in April 2001 was retaliatory.  As that incident occurred within 300 days of her fourth EEOC charge, she timely filed suit as to that claim.

ORDER – 8

1

2

### 2.   The Jury Must Decide If the Five Incidents Are Gender Discrimination or Retaliation.

3      The court cannot determine on summary judgment whether the five incidents it

4 discussed in the previous section constitute gender discrimination and retaliation.  The

5 court declines to engage in a lengthy explanation of how each incident survives the

6 McDonnell Douglas analysis.  Briefly, the court finds that Ms. Shields' evidence is

7 sufficient to create a prima facie case of both retaliation and gender discrimination.[1]  See

8 Sischo-Nownejad v. Merced Cmty. College Dist., 934 F.2d 1104, 1110-11 (9th Cir.

9 1991) (noting that "very little" evidence is necessary to establish a prima facie case)

10 (citation omitted).  The court finds that BCI Coke has offered ample evidence of

11 legitimate reasons for each action.  For example, BCI introduces strong evidence that it

12 fired Ms. Shields in May 2002 for her inappropriate comments regarding where Mr.

13 Nievaard could "shove" the FMLA paperwork he brought her, and for her failure to meet

14 promptly with company officials to discuss the incident.  Ms. Shields in turn provides

15 evidence tending to demonstrate that those reasons are pretextual, and that BCI Coke had

16 at least partially discriminatory and retaliatory motives for discriminating against her.  On

17 balance, BCI Coke presents stronger evidence than Ms. Shields, but not strong enough to

18 sustain its burden on summary judgment.

19

20

21

_____

22      [1]The court questions whether the three December 2001 warnings to Ms. Shields, which
BCI retracted shortly thereafter, can constitute adverse employment actions.  The Ninth Circuit

23 defines an adverse employment action broadly (Ray v. Henderson, 217 F.3d 1234, 1240 (9th
Cir. 2000)), and has noted that a warning to an employee can be an adverse action.  Fonseca v.

24 Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 848 (9th Cir. 2004).  The court is unaware of

25 authority deciding whether a warning that the employer later rescinds is an adverse action.  In a
retaliation claim, the Ray court held that an employment action is adverse "if it is reasonably

26 likely to deter employees from engaging in protected activity."  217 F.3d at 1243.  By its terms,
this definition cannot apply to gender discrimination claims.  Nonetheless, because the parties do

27 not address the issue, the court assumes for purposes of this motion that the three retracted

28 warnings in this case are adverse employment actions.

ORDER – 9

**C.    Ms. Shields' FMLA Claim Survives Summary Judgment.**

Ms. Shields claims that BCI Coke retaliated against her for exercising her rights under the FMLA.  A plaintiff must generally bring a FMLA retaliation claim within two years.  29 U.S.C. § 2617(c)(1).  The statute extends the limitations period to three years for "willful" discrimination based on FMLA status.  29 U.S.C. § 2617(c)(2).  The court need not decide whether a three-year limitations period applies here, as Ms. Shields has only offered evidence of a single incident actionable under the FMLA – her May 2002 termination.[2]  As the parties do not address whether Ms. Shields' FMLA claims are for willful violations, the court assumes that the three-year limitations period applies.  Any FMLA-based retaliation occurring on or after April 1, 2001 is potentially actionable.

There are at least three categories of FMLA claims.  Bachelder v. America West. Airlines, Inc., 259 F.3d 1112, 1124-25 (9th Cir. 2001).  One category, which the court refers to as "interference" claims, covers claims that an employer has "interfere[d] with, restrain[ed, or den[ied] the exercise of or the attempt to exercise" any right the FMLA provides.  29 U.S.C. § 2615(a)(1); Bachelder, 259 F.3d at 1124.  The other categories cover retaliation and discrimination.  One aims at employers who discharge or "discriminat[e] against any individual for opposing any practice made unlawful by" the FMLA.  Bachelder, 259 F.3d at 1124 (quoting 29 U.S.C. § 2615(a)(2)).  The other aims at employers who "discriminat[e] against any individual for instituting or participating in FMLA proceedings or inquiries."  Id. at 1124 (citing 29 U.S.C. § 2615(b)).

---

[2]Although it is difficult to discern, Ms. Shields appears to contend that she exercised her FMLA rights on other occasions and was subject to retaliation.  The evidence shows, however, that the only other FMLA activity Ms. Shields engaged in was requesting "episodic absences" due to her depression and sleep dysfunction.  BCI Coke approved this request, and there is no evidence that it refused  to grant her "episodic absences."  See also Sect. III.D.4, infra (discussing the limited nature of Ms. Shields' FMLA approval).

ORDER – 10

Ms. Shields' FMLA claim is an interference claim.  She claims that BCI Coke terminated her in May 2002 in part because she had requested additional FMLA paperwork, presumably to request FMLA leave.  This claim falls within the interference category.  Id. (holding that "visiting negative consequences on an employee simply because he has used FMLA leave" is an interference claim); see also id. at 1125 (construing plaintiff's claim that her "taking of FMLA-protected leave constituted a negative factor in the decision to terminate her" as an interference claim).  Her claim is thus not subject to the McDonnell Douglas burden shifting analysis,[3] but instead requires only that Ms. Shields prove at trial "by a preponderance of the evidence" that seeking FMLA leave was "a negative factor" in BCI Coke's termination decision.  Id.  Her claim is thus subject to the ordinary standards of Fed. R. Civ. P. 56, under which the court can grant summary judgment only if, taking all inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

Under this standard, Ms. Shields has adduced sufficient evidence to take her FMLA claim to a jury.  Her claim that Mr. Nievaard reacted to her request for additional FMLA paperwork by thrusting the paperwork at her in a threatening manner, coupled with her termination a few days later, raises an inference that her FMLA request played a role in the termination.  As noted above, the court finds that the evidence that BCI Coke fired her for other reasons (her inappropriate comments to Mr. Nievaard and her failure to

---

[3]The McDonnell Douglas framework may be the appropriate standard for FMLA retaliation and discrimination claims outside the interference category.  Bachelder, 259 F.3d at 1125; see Washington v. Fort James Operating Co., 110 F. Supp. 2d 1325, 1330 (D. Or. 2000) (following Morgan v. Hilti, 108 F.3d 1319, 1325 (10th Cir. 1997) and adopting McDonnell Douglas analysis for FMLA claim).

ORDER – 11

1    meet with BCI Coke officials after doing so) to be stronger, but the court cannot resolve

2    the evidentiary conflict on summary judgment.

3    **D.    Few of Ms. Shields' Disability Discrimination Claims Withstand Summary**
4    **        Judgment.**

5            Ms. Shields' disability discrimination claims arise out of four sets of facts.  First,

6    she alleges that BCI Coke discriminated against her in denying her request to transfer to a

7    graveyard cleanup position in 1997.  Second, she argues that BCI's refusal to transfer her

8    from that position back to a day shift position in 1999 was discriminatory.  Third, she

9    points to BCI's alleged refusal beginning in 1999 to relieve her from duties on a

10   production line packaging position known as "the middle."  Finally, she alleges that BCI

11

12   discriminated against her in refusing to rehire her in April 2001 after her one-year leave.

13           **1.    The Statute of Limitations Knocks Out Several of Ms. Shields'**
                 **        Disability Discrimination Claims.**

14
             As the court discussed in Sect. III.A., <u>supra</u>, the first two of these claims are

15

16   untimely.  Ms. Shields accrued them more than three years before she filed suit in this

17   action, and thus they are not actionable under the WLAD.  They were also the subject of

18   EEOC right to sue notifications that she did not act upon within 90 days, and are thus

19   untimely under the ADA.  Her claim regarding the "middle" position is largely untimely

20   as well.  Even construing her claims liberally, she did not complain about this alleged

21   violation in any EEOC charge, much less one that she followed by timely filing suit.

22
     Thus, she has no ADA claim for this set of allegations.  Under the WLAD, she timely
23

24   sued only as to violations relating to the "middle" position that occurred after April

25   2001.[4]

26

27

28           [4]BCI Coke suggested at oral argument that Ms. Shields did not work the middle after
     April 2001.  The court need not reach that issue in light of its disposition of the claim.

ORDER – 12

1
2

### 2. A Review of the Standards for Disability Discrimination Shows That Ms. Shields Has Only a "Failure to Accommodate" Claim.

3

4

To support a disability discrimination claim under the ADA, Ms. Shields must first

5

provide evidence supporting a prima facie discrimination claim. <u>Kennedy v. Applause,</u>

6

<u>Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996); <u>Allen v. Pac. Bell</u>, 348 F.3d 1113, 1114 (9th

7

Cir. 2003). To do so, she must prove that she was disabled within the meaning of the

8
9

ADA, that she was qualified for the job with or without a reasonable disability

10

accommodation, and that BCI Coke took an adverse action against her because of her

11

disability. <u>Id.</u> The disability need not be the sole factor behind the adverse action, but

12

must be a motivating factor. <u>Head v. Glacier Nw., Inc.</u>, 413 F.3d 1053, 1065 (9th Cir.

2005).

13

Once a plaintiff has established a prima facie case, the obligations of the parties

14

depend on the nature of the allegations against the employer. In what the court will refer

15

to as a "direct discrimination" claim, where the employer denies that the plaintiff's

16

disability was a factor in the discrimination, the claim is treated like a gender or racial

17

discrimination claim, subject to <u>McDonnell Douglas</u> burden-shifting analysis from Title

18
19

VII cases. <u>Mustafa v. Clark Cty. Sch. Dist.</u>, 157 F.3d 1169, 1175 (9th Cir. 1998); <u>Snead</u>

20

<u>v. Metro. Prop. & Cas. Ins. Co.</u>, 237 F.3d 1080, 1093 (9th Cir. 2001). On the other hand,

21

if the employer admits that the plaintiff's disability was a factor in its decision, the

22

employer bears the burden of showing that the disability was relevant to the requirements

23

of the job. <u>Mustafa</u>, 157 F.3d at 1176. Under these circumstances, the central issue is

24

often whether the employer failed to reasonably accommodate the plaintiff's disability.

25

Employers must engage in an "interactive process" with the plaintiff to arrive at

26

reasonable accommodation. <u>Barnett v. U.S. Air, Inc.</u> ("<u>Barnett I</u>"), 228 F.3d 1105, 1114

27

(9th Cir. 2000), <u>vacated on other grounds by</u> <u>US Airways, Inc. v. Barnett</u> ("<u>Barnett II</u>"),

28

ORDER – 13

535 U.S. 391 (2002).  The employer need not, however, implement an accommodation that would impose an "undue hardship" on it.  Morton v. United Parcel Serv., Inc., 272 F.3d 1249, 1256 (9th Cir. 2001) (citing 42 U.S.C. § 12112(b)(5)(A)).  To determine if an accommodation imposes an undue hardship, courts consider whether the action requires significant difficulty or expense in light of factors including the cost of the accommodation, the resources of the employer, and the effect of the accommodation on the employer's business.  Id.  The employer bears the burden of demonstrating an undue hardship.  Id. at 1257.

A disability discrimination claim under the WLAD is treated more or less identically to an ADA claim.  The elements of a prima facie case are the same.  Reese v. Sears, Roebuck & Co., 731 P.2d 497, 506 (Wash. 1987), overruled on other grounds by Phillips v. City of Seattle, 766 P.2d 1099, 1103 (Wash. 1989); see also Anica v. Wal-Mart Stores, Inc., 84 P.3d 1231, 1236 (Wash. Ct. App. 2004) (setting forth elements of prima facie direct disability discrimination case).  The duty to reasonably accommodate an employee's disability is also substantially identical to the duty under the ADA.  See, e.g., Roeber v. Dowty Aerospace Yakima, 64 P.3d 691, 697 (Wash. Ct. App. 2003) (setting forth elements of prima facie failure to accommodate claim); Goodman v. Boeing Co., 899 P.2d 1265, 1269-70 (Wash. 1995) (discussing employer's duty to accommodate); Reese, 731 P.2d at 506-07 (same).

Turning to Ms. Shields' disability discrimination claims, she contends that she has a failure to accommodate claim as to her April 2001 termination and a direct discrimination claim as to her May 2002 termination.  The court finds that she has failed to make out a prima facie case as to the May 2002 termination.  On the record before the court, the last disability-related conflict between the parties was over Ms. Shields'

ORDER – 14

reinstatement in July 2001.[5]  From that time forward, the record is silent as to any indication of disability-based animus.  The court thus finds that Ms. Shields fails to provide evidence that disability was a causal factor in her May 2002 termination, and thus has no direct disability discrimination claim.[6]

### 3.    BCI Coke is Entitled to Summary Judgment On Its Undue Hardship Defense.

The court therefore focuses on Ms. Shields' disability claims as allegations that BCI Coke failed to reasonably accommodate her.  The parties do not dispute (at least in this motion) that Ms. Shields had a disability (situational depression and sleep dysfunction) and there appears to be no dispute that but for her alleged need to avoid graveyard shift work and overtime, she was qualified to perform her job.

BCI Coke claims that it could not accommodate Ms. Shields' disability without violating the seniority provisions of the CBA, and that such an accommodation would impose an undue hardship.  It appears from the record that the only accommodation that the parties ever considered was placing Ms. Shields on day shift work and limiting or eliminating overtime assignments for her.  BCI Coke argues that to accommodate her shift and overtime requests, it would likely have had to give her preferential assignments over employees who undisputedly had more seniority than her and were thus entitled to

_____

[5]As the court noted in Sect. III.C. supra, Ms. Shields has raised an inference that her final FMLA-related request was a factor in her termination, but this is not an example of disability discrimination.

[6]Because her May 2002 termination is not actionable as disability discrimination, it appears that even if Ms. Shields can prove disability discrimination, she is entitled to minimal damages.  As she admits, after settling the grievance related to her April 2001 dismissal, BCI Coke paid her all back wages that she was owed.  Her only damage claim is for the amount of pension contributions that she did not receive in the less-than-three-month period between the end of her voluntary leave in April 2001 and her reinstatement in July 2001.  As the parties do not address whether these damages are sufficient, the court proceeds to the merits of the claim.

ORDER – 15

those assignments under the CBA.  Because it could not know in advance whether her

accommodation would violate the CBA, it claims that it could not reinstate Ms. Shields.

Ms. Shields does not contest that her requested accommodation would have possibly

necessitated seniority violations under the CBA.[7]  She contends, however, that other BCI

Coke employees whose disabilities required preferential shift and overtime assignments

were accommodated even though such assignments violated the CBA.

The Supreme Court addressed the issue of whether disability accommodations that

conflict with CBA seniority provisions constitute an undue hardship in Barnett II.  The

Court held that an employer's need to adhere to seniority provisions is "ordinarily"

sufficient to make a conflicting accommodation request an undue hardship.  Barnett II,

535 U.S. at 405.  In "the run of cases," such seniority provisions make it unnecessary to

even consider case-by-case evidence of undue hardship.  Id. at 403.  The Court

recognized exceptions to the general rule, however, and specifically noted that where the

employer has a practice of violating the seniority provisions to accommodate others, it

cannot rely on the general rule to avoid a case-specific factual inquiry:

> The plaintiff might show, for example, that the employer, having retained
> the right to change the seniority system unilaterally, exercises that right
> fairly frequently, reducing employee expectations that the system will be
> followed -- to the point where one more departure, needed to accommodate
> an individual with a disability, will not likely make a difference.

Id. at 405.

Ms. Shields attempts to take advantage of this exception, but the court finds no

evidence supporting that attempt.  Ms. Shields introduces evidence of practices that may

---

[7]The parties disagree over how likely it was that Ms. Shields' reinstatement would have
violated the CBA seniority rules, but the court finds this dispute immaterial.  The parties agree
that there was no way to avoid the possibility (however slight) that BCI Coke would have to
violate seniority rules if they reinstated her, and thus BCI Coke was justified in deciding that it
could not reinstate her without compromising the seniority system.

ORDER – 16

have technically violated seniority provisions, but were rooted in policies having nothing to do with disability accommodation.  The court finds this evidence irrelevant.  For instance, BCI Coke sometimes assigned production line leaders to positions without regard to seniority.  This practice was designed to put the most experienced workers in line leadership positions.  There is also evidence that, for a time, BCI Coke assigned workers from another union to handle "reselect" duties in violation of an agreement to give Ms. Shields' union preference in filling those positions.  This evidence is irrelevant because it does not show a practice of violating seniority provisions to accommodate individual workers' requests, but rather systemic exceptions to the seniority rules for groups of workers.

Ms. Shields offers some evidence of disability accommodations that may have violated seniority provisions, but the court finds that evidence irrelevant as well.  Ms. Shields claims that BCI Coke accommodated four workers by giving them preferential shift assignments in violation of seniority rules.  An examination of the evidence, however, reveals that BCI Coke accommodated each of these workers under its Transitional Duty Policy.  That policy permitted workers injured on the job to receive preferential assignments for up to 90 days.  Although there is evidence that one of these four workers received such accommodation even though his injury occurred away from work, there is no evidence that BCI Coke ever extended such preferential assignments beyond 90 days under the Transitional Duty Policy.  Ms. Shields had no temporary injury, and there is no evidence that she requested or would have accepted a 90-day (or less) accommodation under the Transitional Duty Policy.

The only other evidence of an accommodation violating seniority provisions is evidence that in 1997, before any of the managers who supervised Ms. Shields were in their positions, BCI Coke might have relieved one worker of overtime responsibilities to

ORDER – 17

accommodate his heart condition.[8]  The court holds as a matter of law that a single

accommodation occurring under different management years before Ms. Shields'

accommodation request is insufficient to bring her claim within the scope of the

exception announced in Barnett II.

     For the above reasons, the court concludes that Ms. Shields' disability

accommodation request comes within the general rule of Barnett II.  The court thus holds

that accommodating Ms. Shields' request for day shift work and limited overtime would

have imposed an undue hardship on BCI Coke.  The court grants BCI Coke's motion for

summary judgment as to requested accommodations that would have violated the

seniority rules.

> **4.     Only a Narrow Portion of Ms. Shields' Disability Discrimination Claim Can Proceed to Trial.**

     As to what remains of Ms. Shields' claim that BCI Coke discriminated against her

by requiring her to work the "middle," the court finds no disability discrimination.  The

only disability of which BCI Coke was aware was Ms. Shields' "situational depression"

and "sleep dysfunction."  The only accommodation she needed, according to her

physician and her own FMLA leave requests, was "episodic absence."  Ms. Shields now

complains that the "middle" position was too physically demanding, given her disability.

There is no evidence, however, that her disability limited her physical abilities *while she

was present at work*.  If Ms. Shields' disability affected her ability to perform demanding

physical work (as opposed to her ability to be present at work in general), there is no

---

     [8]The court disagrees with BCI Coke's contention that there is no competent evidence of
this accommodation.  Mr. Nievaard admitted that he was aware of it during his deposition, and
both Ms. Shields and John Sharp, another employee were aware of it.  Although Ms. Shields'
and Mr. Sharp's knowledge may have been grounded in hearsay, the court can consider hearsay
evidence on summary judgment so long as it is possible to cure the hearsay defect at trial.
Fraser v. Goodale, 342 F.3d 1032, 1036-1037 (9th Cir. 2003).

ORDER – 18

record that she informed management of that limitation.[9]  The court therefore finds that BCI Coke did not discriminate when it required Ms. Shields to work the "middle."

Only one aspect of Ms. Shields' disability discrimination claims can withstand summary judgment:  her claim that BCI Coke could have accommodated her disability without violating the CBA seniority provisions.  Specifically, Ms. Shields contends that BCI Coke could have assigned her a position on the "can line" or offered her the syrup tender position that she requested.  The court finds this evidence shaky.  The court finds little evidence that Ms. Shields ever expressed an interest in a "can line" position. Although Ms. Shields contacted BCI Coke regarding the syrup tender position, there is little evidence that she did so as a disability accommodation.  Moreover, there is substantial evidence that Ms. Shields never completed an application for the syrup tender position when Mr. Nievaard told her to do so.  The court cannot, however, resolve these apparent infirmities on summary judgment, and thus will permit Ms. Shields to pursue this narrow strand of her disability discrimination claim at trial.

**E.     Plaintiff Presents Sufficient Evidence to Avoid Summary Judgment on Her WLAD Hostile Work Environment Claim.**

Plaintiff points to numerous incidents throughout her tenure at BCI Coke as evidence that the Bellevue facility was a hostile work environment for women.  A hostile environment claim does not require an adverse employment action, but rather a "pattern of ongoing and persistent harassment severe enough to alter the conditions of employment."  Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1108 (9th Cir. 1998); see

---

[9]At oral argument, Ms. Shields' counsel suggested for the first time that because Ms. Shields indicated in a March 2000 FMLA request that she suffered from fatigue, BCI Coke should have known that she could not work the middle.  Ms. Shields cites no law for the proposition that BCI Coke should have had the prescience to discern that the "episodic absence" that Ms. Shields' physician recommended was inadequate to address Ms. Shields' fatigue.

ORDER – 19

Antonius, 103 P.3d at 735-736 (following federal law).   A court evaluating a hostile

environment claim on summary judgment applies the traditional test under Fed. R. Civ. P.

56 rather than the McDonnell Douglas analysis.  The court must determine if the

evidence presented, viewed in the light most favorable to the Plaintiff, creates a dispute

over whether:

> (1) [Plaintiff] was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.

Porter v. Cal. Dep't of Corr., 383 F.3d 1018, 1027 (9th Cir. 2004); see also Little v.

Windermere Relocation, Inc., 301 F.3d 958, 966-67 (9th Cir. 2001) (applying traditional

summary judgment analysis to hostile environment claim).  Under Washington law, the

elements of a hostile environment claim are similar.  An employee must "establish that:

(1) the harassment was unwelcome; (2) was based on his or her sex; (3) affected the

terms or conditions of employment; and (4) can be imputed to the employer." Doe v.

State, 931 P.2d 196, 199 (Wash. Ct. App. 1997).  Washington courts also apply the

traditional summary judgment standard to such claims.  Sangster v. Albertson's, Inc., 991

P.2d 674, 677 (Wash. Ct. App. 2000).

    Although Ms. Shields' Title VII hostile environment claims are untimely, the court

has reviewed Ms. Shields' evidence and finds it sufficient to take her WLAD hostile

environment claim to a jury.  She offers her own testimony plus testimony from several

other BCI Coke workers that BCI Coke was a difficult place for women to work.  These

witnesses also state that management was aware of the problems.  The court declines to

recount each piece of evidence supporting Ms. Shields' hostile environment claim and

each piece of contrary evidence BCI Coke offers.  Although reasonable persons might

come to different conclusions as to the hostility of the BCI Coke Bellevue facility, "what

ORDER – 20

might be an innocuous occurrence in some circumstances may, in the context of a pattern of discriminatory harassment, take on an altogether different character, causing a worker to feel demeaned, humiliated, or intimidated on account of her gender." Draper, 147 F.3d at 1109 (reversing summary judgment). The court cannot choose one party's version of events over the other's on a motion for summary judgment.

**F.      Ms. Shields Fails to Support Her Claim for Wrongful Termination in Violation of Public Policy.**

While Washington law recognizes a cause of action for wrongful termination in violation of public policy, it requires a plaintiff to articulate a source of public policy independent of the WLAD. See Schonauer v. DCR Entm't, Inc., 905 P.2d 392, 403 (Wash. Ct. App. 1995). Faced with BCI Coke's challenge to point to another source of public policy underlying her claim, Ms. Shields offers no response. The court therefore grants summary judgment against this claim.

**G.      The Court Cannot Resolve Ms. Shields' Claim for Negligent Infliction of Emotional Distress on the Record Before It.**

Ms. Shields' final claim is for negligent infliction of emotional distress. BCI Coke contends that the facts underlying this claim are the same facts underlying her Title VII, FMLA, WLAD, and ADA claims. Washington law does not permit an employee to recover emotional distress damages under these circumstances. See, e.g., Haubry v. Snow, 31 P.3d 1186, 1193 (Wash. Ct. App. 2001); Francom v. Costco Wholesale Corp., 991 P.2d 1182, 1192 (Wash. Ct. App. 2000).

Although the court finds little evidence of an emotional distress claim that is not duplicative of one or more of Ms. Shields' statutory claims, the court will allow the claim to proceed to trial. If Ms. Shields presents no evidence at trial of the infliction of emotional distress independent of the circumstances underlying her statutory claims, the court will grant judgment as a matter of law at the close of Ms. Shields' evidence.

ORDER – 21

# IV.  CONCLUSION

Although the court's role on summary judgment is not to weigh evidence, the court offers the following comments in an effort to guide the parties as they prepare for trial or an alternative resolution of this dispute.  Ms. Shields appears to underestimate the strength of BCI Coke's legitimate reasons for taking various actions against her.  There is ample evidence that Ms. Shields engaged in a variety of inappropriate conduct that would justify BCI Coke's response.  BCI Coke, on the other hand, appears to underestimate the strength of the evidence showing that although its managers likely had legitimate motives for their actions toward Ms. Shields, some of them (especially Mr. Nievaard) may have had discriminatory or retaliatory motives.  It also fails to place its actions in the context of the climate at the Bellevue facility.  The evidence indicates that a woman might reasonably find the facility a hostile place to work.

For the reasons stated above, the court GRANTS BCI Coke's motion for summary judgment (Dkt. # 31) in part and DENIES it in part.  As a summary of the court's order, the court reiterates that only the following claims[10] can proceed to trial:

    1)    Ms. Shields' claims of gender discrimination under Title VII and the WLAD based on the three warnings she received in December 2001 and her termination in 2002;

    2)    Ms. Shields' claims of retaliation under Title VII and the WLAD based on BCI Coke's refusal to offer her the syrup tender position in April 2001, the December 2001 warnings, and her termination in 2002;

    3)    Ms. Shields' gender-based hostile work environment claims under the WLAD;

    4)    Ms. Shields' claim that BCI Coke terminated her in May 2002 partly because she sought to exercise her FMLA rights;

---

[10]The court notes that it will not award Ms. Shields attorneys' fees for her pursuit of the claims that the court has dismissed in this order.  It also notes its skepticism of any claim for future wage loss under the circumstances presented here.

5)   Ms. Shields' ADA and WLAD claim that BCI Coke could have accommodated her disability without violating the CBA seniority provisions; and

6)   Ms. Shields' negligent infliction of emotional distress claim, to the extent that she can demonstrate a factual basis for the claim independent of her statutory claims.

The parties shall appear for a pretrial conference at 1:30 p.m. on Friday, September 9, 2005.  If the court's trial calendar requires it to delay the conference until later that afternoon, the court's deputy clerk will contact the parties.  The court notes that motions in limine are due tomorrow, August 26, 2005.  The parties may delay their motions in limine until Monday, August 29, 2005 so that they may modify their motions in light of the court's disposition of claims in this order.

In advance of the pretrial conference, the parties shall contact Carolyn Cairns, Esq., to schedule a second mediation.  Ms. Cairns shall set the terms of the mediation, including the date, time, form of mediation, and the representatives of the parties who shall attend.

Dated this 25th day of August, 2005.


JAMES L. ROBART
United States District Judge

ORDER – 23